1 | EDMUND G. BROWN JR.
Attorney General of the State of California
2 | DANE R. GILLETTE
Chief Assistant Attorney General
3 | GERALD A. ENGLER
Senior Assistant Attorney General
4 | PEGGY S. RUFFRA
Supervising Deputy Attorney General
5 | BRUCE ORTEGA
[State Bar No. 131145]
6 | Deputy Attorney General
  455 Golden Gate Avenue, Suite 11000
7 |  San Francisco, California 94102-7004
   Telephone: (415) 703-1335
8 | Fax: (415) 703-1234
   e-mail: bruce.ortega@doj.ca.gov
9 | Attorneys for Respondent

10 | IN THE UNITED STATES DISTRICT COURT

11 | FOR THE NORTHERN DISTRICT OF CALIFORNIA

12 | SAN JOSE DIVISION

|  |  |
|---|---|
| **LUTHER JONES, JR.,** | C 07-4926 JW (PR) |
| Petitioner, | **MOTION TO DISMISS SUCCESSIVE PETITION FOR WRIT OF HABEAS CORPUS DUE TO PETITIONER'S FAILURE TO COMPLY WITH 28 U.S.C. § 2244(b)** |
| v. | |
| **SUSAN HUBBARD, Warden of the California Medical Facility, Vacaville,** | |
| Respondent. | Hearing Date: None Requested |

RESPONDENT HEREBY MOVES TO DISMISS this Successive Petition for Writ of Habeas Corpus on the grounds that petitioner has failed to comply with 28 U.S.C § 2244(b) and obtain an order from the United States Court of Appeals for the Ninth Circuit authorizing this Court to consider the petition. Respondent has not noticed a hearing date because petitioner, Luther Jones, Jr., is an incarcerated state prisoner who is representing himself in this action.

## INTRODUCTION

In *Cunningham v. California*, — U.S. —, 127 S. Ct. 856 (2007) the High Court held that California's Determinate Sentencing Law, which authorized the judge, not the jury, to find the facts

1   exposing the defendant to a higher (or upper) term, violated the defendant's Sixth Amendment right

2   to a jury trial.  On September 21, 2007, petitioner filed a habeas petition challenging a portion of his

3   sentence on *Cunningham* grounds.  (Docket No. 1.)  On December 14, 2007, this Court issued an

4   Order to Show Cause, directing respondent to file an answer to the petition and demonstrate that "a

5   writ of habeas corpus should not be issued."  (Docket No. 3 at 3.)  This Court also stated that

6   "Respondent may file a motion to dismiss on procedural grounds in lieu of an answer." *Id.*; *accord*

7   *White v. Lewis*, 874 F.2d 599, 602-03 (9th Cir. 1989) (motion to dismiss is a proper pleading in

8   response to an OSC.)[1]

9                    **POST-JUDGMENT PROCEDURAL BACKGROUND**

10      A Lake County Superior Court jury convicted petitioner of lewd and lascivious conduct on a

11  child under 14 in violation of Cal. Penal Code § 288(a) (counts I and II), oral copulation with a child

12  under 14 in violation of § 288a(c) (count III), willful penetration with a foreign object in violation

13  of § 289(a) (count IV), exhibiting harmful material to a minor with intent to seduce in violation of

14  § 288.2(a) (count V), threatening or intimidating a witness in violation of § 136.1(c)(1) (count VI),

15  and misdemeanor battery in violation of § 242 (count VII).  Exh. A.

16      On June 12, 1998, the trial court sentenced petitioner to 27 years in state prison, as follows:

17  the court ordered petitioner to serve the upper term of eight years on the count I conviction for lewd

18  and lascivious conduct on a child under 14 years old, a consecutive term of two years on the count

19  II conviction for lewd and lascivious conduct, a consecutive eight-year term on the count III

20  conviction for oral copulation, a consecutive eight-year term on the count IV conviction for willful

21  penetration with a foreign object, and a consecutive one-year term on the count VI conviction for

22  threatening or intimidating a witness.  The court imposed a concurrent term of three years on the

23  count V conviction for exhibiting harmful material to a minor with intent to seduce, and a concurrent

24

---

25      1. As this Court has made clear, because we are filing a Motion to Dismiss, petitioner "shall
26  file with the Court and serve on respondent an opposition or statement of non-opposition to the
    motion within forty-five (45) days of receipt of the motion, and respondent shall file with the court
27  and serve on petitioner a reply within twenty (20) days of receipt of any opposition." (Docket No.
    3 at 3) (emphasis omitted).
28

1  180-day county jail sentence on the count VII misdemeanor battery conviction. Pet. Exh. 2.

2      Petitioner appealed, and on June 10, 1999, the California Court of Appeal. First Appellate

3  District, Division Five, affirmed the judgment against him, but modified the judgment to correct a

4  minor sentencing error. Exh. A at 12. "The concurrent sentence imposed on count V is ordered

5  stayed, such stay to become permanent upon completion of the sentences imposed on counts I, II,

6  III, IV, and VI. The trial court is directed to submit a corrected copy of the abstract of judgment to

7  the Department of Corrections. In all other respects, the judgment is affirmed." *Id.*

8      The California Supreme Court denied petitioner's petition for review of the court of appeal

9  opinion on August 25, 1999. Exh. B. Petitioner's case therefore became final on November 23,

10  1999. *Wixom v. Washington*, 264 F.3d 894, 897 (9th Cir. 2001) (where, as here, no petition for writ

11  of certiorari is filed, state court judgment becomes final 90 days after California Supreme Court

12  denies the petition for review).

13      On April 26, 2000, petitioner filed a federal petition for writ of habeas corpus in this Court,

14  *Jones v. Small*, C-00-20600-JW (PR), raising three constitutional challenges to his state court

15  convictions. Exh. C. Petitioner alleged that (1) his trial court violated his due process rights by

16  allowing the prosecutor to read his (petitioner's) testimony from the first trial (hung jury) into the

17  record, when petitioner testified at the retrial; (2) insufficient evidence supported the sex-offense

18  convictions; and (3) he received ineffective assistance of appellate counsel. Exh. D. This Court

19  ordered respondent to answer the habeas petition, and respondent did so on August 2, 2000. Exhs.

20  C, D.

21      On December 2, 2003, this Court denied the habeas petition on the merits, and it subsequently

22  denied petitioner a certificate of appealability. Exh. C. So did the Ninth Circuit. *Id.*

23      As stated, petitioner filed his present second federal habeas petition on September 21, 2007.

24

25

26

27

28

MOT. TO DISMISS SUCCESSIVE PET. FOR WRIT OF HABEAS CORPUS               *Jones v. Hubbard.*
DUE TO PET.'S FAILURE TO COMPLY WITH 28 U.S.C. § 2244(b)                C 07-4926 JW (PR)

1

## ARGUMENT

2

**PETITIONER HAS FILED A SUCCESSIVE PETITION FOR WRIT OF
HABEAS CORPUS WITHOUT OBTAINING LEAVE TO DO SO FROM
THE NINTH CIRCUIT; ACCORDINGLY, THIS COURT SHOULD
DISMISS THE PETITION**

3

4

5    Although petitioner does not discuss it in his present petition, this is his second or successive

6    federal habeas attack on the state judgment against him. *See* Exh. C, D. There is no dispute that the

7    Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") applies to this case, *Lindh v.*

8    *Murphy*, 521 U.S. 320 (1997), and under the AEDPA, specifically 28 U.S.C. § 2244(b), a district

9    court may not consider a successive petition unless the applicant has obtained an order from the

10   Ninth Circuit granting leave to proceed with the petition. 28 U.S.C. 2244(b) reads as follows :

11       **(b)(1)** A claim presented in a second or successive habeas application under section
2254 that was presented in a prior application shall be dismissed.

12

13       **(2)** A claim presented in a second or successive habeas corpus application under
section 2254 that was not presented in a prior application shall be dismissed unless—

14       **(A)** the applicant shows that the claim relies on a new rule of constitutional law
made retroactive to cases on collateral review by the Supreme Court, that was
previously unavailable; or

15

16       **(B)(i)** the factual predicate for the claim could not have been discovered
previously through the exercise of due diligence; and

17

18       **(ii)** the facts underlying the claim, if proven and viewed in the light of the
evidence as a whole, would be sufficient to establish by clear and convincing
evidence that, but for constitutional error, no reasonable fact finder would have found
the applicant guilty of the underlying offense.

19

20       **(3)(A)** Before a second or successive application permitted by this section is filed
in the district court, the applicant shall move in the appropriate court of appeals for an
order authorizing the district court to consider the application.

21

22       **(B)** A motion in the court of appeals for an order authorizing the district court to
consider a second or successive application shall be determined by a three-judge panel of
the court of appeals.

23

24       **(C)** The court of appeals may authorize the filing of a second or successive
application only if it determines that the application makes a prima facie showing that the
application satisfies the requirements of this subsection.

25

26       **(D)** The court of appeals shall grant or deny the authorization to file a second or
successive application not later than 30 days after the filing of the motion.

27

28       **(E)** The grant or denial of an authorization by a court of appeals to file a second or

MOT. TO DISMISS SUCCESSIVE PET. FOR WRIT OF HABEAS CORPUS          *Jones v. Hubbard.*
DUE TO PET.'S FAILURE TO COMPLY WITH 28 U.S.C. § 2244(b)          C 07-4926 JW (PR)

1    successive application shall not be appealable and shall not be the subject of a petition for
     rehearing or for a writ of certiorari.

2

3        **(4)**  A district court shall dismiss any claim presented in a second or successive
     application that the court of appeals has authorized to be filed unless the applicant shows
     that the claim satisfies the requirements of this section.

4

5    28 U.S.C. § 2244(b).

6        Petitioner's present second or successive petition raises a challenge to his sentence that he did

7    not raise in his 2000 habeas application.  Although the directions to his petition told him that if he

8    had previously filed a petition for a writ of habeas corpus in federal court that challenged the same

9    conviction he was challenging now, and if that petition was denied, he needed to file a motion in the

10   Ninth Circuit for an order authorizing this Court to consider the petition (*see* Docket No. 1 at 4), he

11   has not done so.  Apparently petitioner believes that 28 U.S.C. § 2244(b)(2)(A) applies here—that

12   his reliance on *Cunningham v. California*, 127 S. Ct. 856, is reliance "on a new rule of constitutional

13   law made retroactive to cases on collateral review by the Supreme Court, that was previously

14   unavailable."  But as the plain language of 2244(b)(3)(A), makes clear, the applicability of §

15   2244(b)(2)(A) is for the Court of Appeals in the first instance, not this Court or petitioner.  This

16   Court must dismiss, without prejudice, any second or successive petition unless the Court of Appeals

17   has given petitioner leave to file the petition because a district court lacks subject-matter jurisdiction

18   over a second or successive petition.  *Pratt v. United States*, 129 F.3d 1268, 1277 (1st Cir. 1997);

19   *Greenawalt v. Stewart*, 105 F.3d 1268, 1277 (9th Cir. 1997).

20       In any event, 28 U.S.C. § 2244(b)(2)(A) would not apply here, and thus the interests of justice

21   would not support a transfer to the Ninth Circuit, rather than dismissal.  28 U.S.C. § 1631.  There

22   is no indication that the Supreme Court made *Cunningham* retroactive to cases, like petitioner's, that

23   were final before *Cunningham's* issuance.  And while the Ninth Circuit has not yet addressed the

24   question, numerous district courts in this circuit have held that *Cunningham* does not apply

25   retroactively to cases on collateral review.  *See Jordan v. Evans*, No. 07CV466-J (NLS), 2007 U.S.

26   Dist. LEXIS 68222, 2007 WL 2703118, at *21 (S.D. Cal. Sept. 14, 2007); *Beyett v. Yates*, No. C 06-

27   7598 WHA (PR), 2007 U.S. Dist. LEXIS 68546, 2007 WL 2600745, at *2 (N.D. Cal. Sept. 10,

28

1    2007); *Zimmeth v. Hernandez*, No. 05CV1695 JAH (RBB), 2007 U.S. Dist. LEXIS 65047, 2007 WL

2    2556771, at *9 (S.D. Cal. Sept. 4, 2007); *Lopez v. Campbell*, No. 1:05-CV-00481 LJO-TAG HC,

3    2007 U.S. Dist. LEXIS 66384, 2007 WL 2500424, at *3 (E.D. Cal. Aug. 30, 2007); *Marquez v.*

4    *Evans*, No. C 06-0913 CRB (PR), 2007 U.S. Dist. LEXIS 65681, 2007 WL 2406867, at *9 (N.D.

5    Cal. Aug. 20, 2007); *Bouie v. Kramer*, No. CIV S-06-1082 GEB GGH P, 2007 U.S. Dist. LEXIS

6    50843, 2007 WL 2070330, at *3 (E.D. Cal. July 13, 2007); *see also Fennen v. Nakayema*, 494 F.

7    Supp. 2d 1148 (E.D. Cal. 2007); *Rosales v. Horel*, No. 06-2327, 2007 U.S. Dist. LEXIS 46551, at

8    *6 (because *Cunningham* relied heavily on the new procedural rule announced in *Blakely v.*

9    *Washington*, 542 U.S. 296 (2004), and "because the Ninth Circuit has already decided *Blakely* is not

10   retroactive, then *Cunningham* is also not retroactive").

11       Petitioner can only proceed with permission from the Ninth Circuit. He has not obtained it.

12   This Court should dismiss the present habeas application.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOT. TO DISMISS SUCCESSIVE PET. FOR WRIT OF HABEAS CORPUS          *Jones v. Hubbard.*
DUE TO PET.'S FAILURE TO COMPLY WITH 28 U.S.C. § 2244(b)           C 07-4926 JW (PR)

1

**CONCLUSION**

2      WHEREFORE, RESPONDENT RESPECTFULLY PRAYS that this Court dismiss the Petition

3   for Writ of Habeas Corpus.

4           Dated:  March 10, 2008

5                                      Respectfully submitted,

6                                      EDMUND G. BROWN JR.
                                       Attorney General of the State of California
7                                      DANE R. GILLETTE
                                       Chief Assistant Attorney General
8
                                       GERALD A. ENGLER
9                                      Senior Assistant Attorney General

10                                     PEGGY S. RUFFRA
                                       Supervising Deputy Attorney General
11

12                                     /s/ Bruce Ortega

13                                     BRUCE ORTEGA
                                       Deputy Attorney General
14
                                       Attorneys for Respondent
15   :BO
     SF2007402422
16   40225885.wpd
     3/7/08

17

18

19

20

21

22

23

24

25

26

27

28

MOT. TO DISMISS SUCCESSIVE PET. FOR WRIT OF HABEAS CORPUS                    *Jones v. Hubbard.*
DUE TO PET.'S FAILURE TO COMPLY WITH 28 U.S.C. § 2244(b)                     C 07-4926 JW (PR)

# EXHIBIT A

COPY

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

**FILED**

Court of Appeal-First App. Dist.

JUN 10 1999

RON D. BARROW, CLERK

BY _____

DEPUTY

THE PEOPLE,

    Plaintiff and Respondent,

    v.

LUTHER ED JONES, JR.,

    Defendant and Appellant.

A083197

(Lake County
Super. Ct. No. CR4560)

Defendant was charged with seven offenses involving molestation of a ten-year-old girl.[1] A jury trial was held, but a mistrial was declared after the jury was found to be deadlocked. At the second trial the jury found defendant guilty on all counts, and defendant was sentenced to prison for 27 years. On appeal, defendant challenges the sufficiency of the evidence on the sex offenses and the admissibility of his testimony from the first trial. He also claims sentencing error. We modify the judgment to correct the sentencing error but otherwise affirm the judgment of conviction.

I. FACTS

A. THE MOLESTATION

In April 1996 10-year-old La'Esha C. was living with her mother and two siblings in an apartment owned by and shared with defendant. Defendant and La'Esha's mother,

---

[1]    Defendant was charged with lewd and lascivious conduct upon a child under 14 (counts I and II), oral copulation with a child under 14 (count III), willful penetration with a foreign object (count IV), exhibiting harmful material to a minor with intent to seduce (count V), threatening or intimidating a witness (count VI), and misdemeanor battery (count VII).

Elizabeth Woods, had lived together on and off for about 4 years, and defendant was the father of La'Esha's 2-year-old half-sister, Breyona.

One day, after Elizabeth Woods had left the apartment to go to Safeway, defendant took La'Esha into the bedroom. La'Esha saw magazines of naked women on the bed and a pornographic movie playing on the VCR. Defendant took off his clothes and started taking off La'Esha's clothes. When she tried to stop him, defendant slapped her face. Defendant managed to get La'Esha's clothes off, and then he began touching her on the chest and between her legs. He put his finger in her vagina, and he instructed La'Esha to touch his penis with her hands and with her mouth. La'Esha felt scared and nervous.

After about 10 minutes, Elizabeth Woods returned home, and defendant stopped. He threw La'Esha's clothes at her and told her to go into the bathroom and pretend she was going to take a shower. Defendant told La'Esha, "If you tell anybody, I'll track you down like a dog and shoot you." La'Esha believed him and did not tell her mother or anyone else. La'Esha testified that defendant molested her in similar fashion about four other times in March and April, but she could not recall the specific details of those other incidents. They were similar, except that defendant did not threaten her.

B. THE APRIL 13 BEATING

Within a day or so after the molestation, La'Esha and her mother were in the kitchen. La'Esha was clearing up the dirty dishes, and her mother was fixing a bowl of cereal. Elizabeth Woods cautioned La'Esha to "be careful" because defendant had just come back from smoking dope. Defendant became angry that La'Esha had missed a plate, and he "slammed" her with open hands across her face. She fell onto the couch, crying.

Elizabeth Woods mumbled to La'Esha, "I told you he was going to be crazy." Defendant asked, "What did you say?" And then he shoved the table into Elizabeth's

2

stomach. Elizabeth was eight and a half months pregnant.[2] Defendant knocked over the cereal bowl and began to beat Elizabeth, as La'Esha ran to a neighbor's house to phone the police. La'Esha was afraid of defendant.

The police arrived and found Elizabeth lying on the walkway. Defendant was arrested at the scene and Elizabeth was taken to the hospital. Defendant was eventually convicted in an earlier proceeding of two counts of battery, one for Elizabeth and one for La'Esha.

On the day of his arrest, April 13, 1996, defendant was released on bail and returned to his apartment. When he found Elizabeth still there, he telephoned the police to have her removed. The police declined to remove her, as she was living there, but the police did suggest that Elizabeth go to a shelter, and she did so. Elizabeth and her children did not live on defendant's property after that.

C. SUBSEQUENT EVENTS

The following month, in May 1996, defendant instituted proceedings to obtain custody of his daughter, Breyona. Elizabeth Woods did not respond, and on August 26, 1996, defendant obtained a default judgment granting him custody. He took physical custody the same day.

That event prompted La'Esha to reveal the molestation. First she told two adult family friends with whom she was living at the time. She did so, because "I didn't want him to do the same thing to her as he did to me." A few days later, on August 30, she told her school vice-principal, Pamela Smith. Again, according to Ms. Smith, La'Esha "was afraid that Luther was going to do what he had done to her to her younger sister, and so that's why she was telling me this now, even though the incident happened or the incidents happened prior to this."

---

[2]    Elizabeth testified that the fight actually started the night before when she refused to smoke crack cocaine with defendant and refused to participate in defendant's sexual activities—watching pornographic movies and "being Daddy's little girl."

Ms. Smith called the police and Elizabeth Woods. Ms. Smith was surprised by the reaction of Elizabeth Woods: Elizabeth seemed more concerned about getting back at defendant than she did about La'Esha's welfare. Elizabeth testified at trial that she had noticed La'Esha became withdrawn after custody of Breyona was given to defendant, but she (Elizabeth) hadn't known what was wrong.

La'Esha subsequently met with Officer Dewey of the Clearlake Police Department and described the molestation. She told him there had been about four other incidents as well. La'Esha seemed nervous and embarrassed talking to the officer, "real withdrawn."

About two weeks after defendant obtained custody, Elizabeth filed responsive pleadings and custody of Breyona was returned to her. By the time of trial, however, all the children were in foster care.

La'Esha underwent a medical examination on April 4, 1997, a year after the molestation. The examination revealed irregularities in La'Esha's hymen. Although irregularities are not uncommon for girls of her age and development, the irregularities were also consistent with digital penetration in that "there wasn't much hymeneal tissue left between the side wall here and that of the vaginal wall. . . . [¶] It's possible that the 3 o'clock and 9 o'clock position were actually tears. That at one point in time they were actually together."

At trial expert testimony was presented on the child sexual abuse accommodation syndrome—the typical consequences for children who are sexually abused. The expert testified that secrecy is part of the syndrome; that perpetrators often use some type of threat or coercion to keep the child quiet, and that threat is normally quite effective as children feel helpless to prevent the threat from being carried out. Delayed disclosure is also part of the syndrome: abused children feel shame and embarrassment, as well as fear from the perpetrator's threats. Disclosure may come after a separation from the perpetrator, when the child feels safer. Or disclosure may come when the child perceives that someone else is in danger of abuse. It is consistent with the syndrome for the abused victim not to remember details of the event or of the perpetrator. "We call it

4

disassociating. That if you can't stop it from happening and it's too embarrassing or shameful for you to tolerate, you may try to blank it out of your memory."

    D. DEFENSE

    Defendant testified that he was in prison in 1995 and was released in February 1996. He stayed with a girlfriend for a few weeks and then, at the end of March or the first of April, he moved back onto his own property.[3] In mid-March he had asked Elizabeth Woods for custody of Breyona, and Elizabeth had agreed. Soon thereafter, Elizabeth's mother asked defendant if he would take in Elizabeth and the other children. Defendant found Elizabeth living in her car in Clearlake and invited her to stay in one of the apartments on his property. Elizabeth and the children stayed in apartment No. 3 while defendant stayed in apartment No. 4.

    Defendant denied living with Elizabeth Woods in apartment No. 3. He denied having a VCR or pornographic magazines or videos. He denied molesting La'Esha. He testified that Elizabeth never left the apartment during the two weeks she lived there: not only did she have no money, she was pregnant and "too far gone on drugs."

    Defendant denied beating La'Esha or Elizabeth on April 13. He testified that he saw drugs on the table and smashed them. He conceded that he threw milk and cornflakes at Elizabeth, but he denied hitting her.

    Defendant claimed that La'Esha was fabricating the molestation at the direction of her mother to assure that defendant would not get custody of Breyona. Defendant produced several witnesses who cast doubt on the credibility of La'Esha and her mother. Yolanda Davis testified that Elizabeth once told her that she would never let defendant get custody of Breyona, that she would put defendant in jail to keep him from getting custody. Yolanda Davis also testified that La'Esha was obedient to her mother.

---

[3]    Defendant and his four sisters inherited a parcel of property in Clearlake from their parents in 1995. There are two sets of duplexes, totaling four apartments, on the property as well as a mobile home and a studio apartment behind that.

Charles Miller similarly testified that La'Esha would do whatever Elizabeth Woods wanted her to do, including lying. Charles Miller recalled that at one time, after he had removed Elizabeth Woods from his premises, she accused him of molesting her son Robert. Later, in the spring or summer of 1996, Elizabeth Woods complained to Charles Miller that defendant had molested both La'Esha and Breyona, and in a "wild, angry" manner she threatened to put defendant in jail.

Shaquirah Johnson, age 16, testified that La'Esha and her brothers lived with Shaquirah and her family for about a year between 1990 and 1992. At one point La'Esha told Shaquirah that her older brother, Deandre, had molested her. Shaquirah told her mother, Carmin Harris, about the allegation. Carmin Harris confirmed that she took care of Elizabeth Woods' children in 1991 and that Shaquirah told her of La'Esha's accusation that Deandre had molested her. When Carmin Harris asked La'Esha about it, La'Esha denied making the allegation.

II. DISCUSSION

A. SUFFICIENCY OF THE EVIDENCE

Defendant contends that the evidence presented at trial concerning the sexual abuse of La'Esha raised "more than a reasonable doubt" about defendant's guilt and was therefore insufficient to support his convictions. What defendant ignores, however, is that it is the jury, not the appellate court, that must be convinced of the defendant's guilt beyond a reasonable doubt. (*People* v. *Ceja* (1993) 4 Cal.4th 1134, 1139; *People* v. *Bean* (1988) 46 Cal.3d 919, 933.) Our role in considering a claim of insufficient evidence is limited. We "'review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' [Citations]" (*Ceja, supra*, at p. 1138; *People* v. *Johnson* (1980) 26 Cal.3d 557, 576-578.) We do not reweigh the evidence, resolve conflicts in the evidence, or reevaluate the credibility of the witnesses. If the

circumstances reasonably justify the jury's findings, it is of no consequence that the circumstances might also support a contrary finding. (*Ceja, supra,* at p. 1139.)

Here, the testimony of La'Esha provided substantial evidence that defendant committed the charged sexual offenses. La'Esha testified that defendant took off his clothes and began removing her clothes, too. When La'Esha tried to stop him, defendant slapped her and removed the rest of her clothes. He then began touching La'Esha and put his finger in her vagina. He also had La'Esha touch his penis with her hands and mouth. This testimony fully supports the charges of two lewd acts, penetration with a foreign object, and oral copulation.

Defendant points to various factors casting doubt on La'Esha's credibility: (1) La'Esha claimed about four or five incidents had occurred under similar circumstances; yet, Elizabeth Woods testified she did not leave the children alone, except once. (2) La'Esha told Pamela Smith, the vice-principal, and Officer Dewey that the molestations occurred in February or March; yet, defendant was not released from prison until mid-February and did not return to Clearlake until the end of March or early April. (3) La'Esha could not remember many details of the offense and in particular did not recall a tattoo; yet, defendant has a large red flower and a dragon tattooed on his chest. (4) La'Esha did not report the molestation to the police officers when they arrived for the April 13 incident. (5) The physical examination was not conducted until a year after the assault, and the hymeneal irregularities were inconclusive proof of a sexual assault. (6) La'Esha had previously accused her older brother of molesting her. (7) Both La'Esha and her mother had a motive to bring false charges against defendant so as to prevent defendant from gaining custody of Breyona.

Those factors, of course, were for the jury to consider in assessing La'Esha's credibility, as, indeed, defense counsel argued in his final summation. The testimony of a single witness, unless the testimony is physically impossible or inherently improbable, is sufficient to sustain a conviction, even if it is inconsistent or contradicted by other

evidence. (*People* v. *Scott* (1978) 21 Cal.3d 284, 296; *People* v. *Leigh* (1985) 168 Cal.App.3d 217, 221.)

La'Esha's testimony was neither physically impossible nor inherently improbable. Moreover, the jury heard other evidence to indicate the reliability of La'Esha's testimony. La'Esha told her school vice-principal about the sexual assault by defendant, and she gave a consistent report to Officer Dewey of the Clearlake Police Department. Medical testimony indicated that the irregularities in La'Esha's hymen were consistent with digital penetration. The evidence concerning the child sexual assault accommodation syndrome showed that it is consistent with the truth for a sexually abused child to delay disclosure of the crime and to lack a detailed recollection of the events. And, finally, as the prosecutor pointed out in closing argument, defendant lost custody of Breyona even without the molestation charges: custody was returned to Elizabeth Woods as soon as she cured her default. The molestation charges were instituted well after that.

B. FORMER TESTIMONY

In a pretrial motion in limine, the prosecution sought to admit defendant's testimony from the first trial to show consciousness of guilt in that defendant's exculpatory testimony was an attempt to cover up his guilt. The matter was deferred until trial, at which time defendant objected that the evidence was irrelevant and cumulative and, further, that defendant was not unavailable as a witness because he would be testifying at this trial. The trial court ruled the evidence admissible as former testimony.

At that point in the proceedings, the prosecution had already presented in its case-in-chief the testimony of La'Esha and her mother as well as witnesses to whom La'Esha had reported the molestation. The prosecution had also presented expert testimony concerning the child sexual abuse accommodation syndrome. Defendant's testimony from the first trial was then read to the jury.

In that prior testimony, defendant denied that Elizabeth Woods and her children lived with him; he testified that he lived in the apartment next door. Defendant denied that Elizabeth Woods ever left La'Esha at home with him and denied any sexual contact

8

with La'Esha. He denied owning a VCR or any pornographic magazines or videos. He also denied assaulting Elizabeth Woods in the April 13 altercation. Defendant testified that he merely threw milk and corn flakes at Elizabeth during an argument about Elizabeth's drug use, although he conceded he was convicted of battery of both La'Esha and Elizabeth as a result of the incident.

Following the presentation of defendant's prior testimony, the prosecution produced two police witnesses, who had not testified at the first trial, who contradicted defendant's testimony concerning the April 13 incident. Both officers testified that Elizabeth had reportedly been beaten and kicked by defendant. Officer Irwin described the visible injuries to Elizabeth. Both officers concluded that defendant was living with Elizabeth and La'Esha in the same apartment. Not only did defendant tell Sgt. Larsen so, but an inspection of the apartment confirmed that a man was living there. Moreover, defendant told Sgt. Larsen that a crack pipe belonging to Elizabeth Woods could be found under the mattress, under her side of the bed. Both officers also testified that they found pornographic videos in the bedroom.

The legal issue as framed by the parties is whether a defendant who indicates that he plans to testify at trial qualifies as being "unavailable" for purposes of admitting his previous testimony as "former testimony" under Evidence Code section 1291.[4] (See generally *People* v. *Reed* (1996) 13 Cal.4th 217, 225-227 [applying "pragmatic" approach to concept of unavailability].) However, we find it unnecessary to reach that issue, as we conclude that Evidence Code section 1291 is not at issue. Section 1291 establishes an exception to the hearsay rule, rendering admissible former testimony that would otherwise be inadmissible hearsay. Yet here, as the prosecution argued below,

---

[4]    Evidence Code section 1291, subdivision (a), provides in pertinent part: "Evidence of former testimony is not made inadmissible by the hearsay rule if the declarant is unavailable as a witness and: [¶] (1) The former testimony is offered against a person who offered it in evidence in his own behalf on the former occasion . . . ."

defendant's testimony from his first trial was not being admitted to prove the truth of the matters stated; the prosecution obviously was not attempting to establish that defendant was innocent of the charges, as he so testified. Rather, the prosecution's stated purpose of the testimony was to show a consciousness of guilt in that defendant fabricated his testimony at the first trial.[5] Defendant's prior testimony was not hearsay. (Evid. Code, § 1200.)

Because defendant's prior testimony was not hearsay, the real question is not whether the prior testimony came within an exception to the hearsay rule but whether the testimony was relevant to the issues at the second trial. Defendant does not seem to challenge the relevancy of his own prior testimony. Instead, his brief focuses on the testimony of the two police officers concerning the April 13 incident.

We find no error in the trial court's ruling that the testimony of the two police officers was relevant to the issues at trial. La'Esha and Elizabeth both testified about the April 13 incident, without any objection by defendant. Indeed, the evidence was pertinent to show La'Esha's fear of defendant and to explain, as indicated by the testimony on child sexual abuse accommodation syndrome, why La'Esha might have delayed disclosing defendant's acts of sexual abuse. We observe that on cross-examination of Pamela Smith, La'Esha's vice-principal, defense counsel elicited that La'Esha had reported the April 13 fight to her and that La'Esha was "very scared of [defendant]" because of their fight.

Defendant contends that the police testimony had no relevance as impeachment evidence because the police officers did not actually impeach defendant. Our review of the record, however, discloses at least three direct contradictions between the testimony of the police officers and defendant's prior testimony—(1) on whether Elizabeth Woods

---

[5]    Defendant contends that the prosecution's stated purpose was a subterfuge and that the real purpose was to enable the prosecution to bolster the credibility of La'Esha and her mother with the police testimony about the April 13 incident. Defendant makes no assertion that his prior testimony was admitted for a hearsay purpose.

had actually been beaten and kicked or was feigning the attack; (2) on whether defendant was living in the apartment with Elizabeth Woods and her children; and (3) on whether defendant possessed pornographic materials.

In his direct testimony, defendant denied the April 13 beating, denied living with Elizabeth Woods and her children, and denied owning pornographic materials. Certainly the prosecution could have introduced the police witnesses to contradict defendant's testimony and to corroborate the testimony of La'Esha and her mother. The trial court's ruling allowing the prosecution to present the testimony of the police witnesses in its case-in-chief rather than in rebuttal was neither erroneous nor prejudicial to defendant.

C. SENTENCING ERROR

Defendant was sentenced to consecutive terms totaling 26 years for the sex offenses, counts I through IV, plus an additional consecutive one-year term on count VI for threatening a witness. Defendant also received a concurrent term of 3 years on count V for exhibiting harmful material to a minor with intent to seduce. Defendant argues that the sentences on counts V and VI should have been stayed pursuant to Penal Code section 654 because the offenses involved the same intent and objective as the sex crimes (counts I through IV).

The Supreme Court has explained the rule against multiple punishment as follows: "[I]f all of the offenses were merely incidental to, or were the means of accomplishing or facilitating one objective, defendant may be found to have harbored a single intent and therefore may be punished only once. [Citation.] [¶] If, on the other hand, defendant harbored 'multiple criminal objectives,' which were independent of and not merely incidental to each other, he may be punished for each statutory violation committed in pursuit of each objective, 'even though the violations shared common acts or were parts of an otherwise indivisible course of conduct.'" (*People* v. *Harrison* (1989) 48 Cal.3d 321, 335.)

The Attorney General concedes the error as to count V in that defendant's act of exhibiting pornographic materials to La'Esha with the intent to seduce was merely a

means of facilitating defendant's objective of achieving sexual gratification. The Attorney General concedes that the sentence on count V should have been stayed, not imposed concurrently. (*People* v. *Miller* (1977) 18 Cal.3d 873, 886-887.)

The Attorney General disputes, and rightly so, defendant's claim with respect to count VI. The objective underlying defendant's threatening remarks to La'Esha was to prevent detection of the sexual assault—an objective separate from and independent of the sexual objective of the molestation. The consecutive term for count VI did not violate section 654.

III. <u>DISPOSITION</u>

The concurrent sentence imposed on count V is ordered stayed, such stay to become permanent upon completion of the sentences imposed on counts I, II, III, IV, and VI. The trial court is directed to submit a corrected copy of the abstract of judgment to the Department of Corrections. In all other respects, the judgment is affirmed.

_____

STEVENS, J.


We concur.


_____

JONES, P.J.


_____

HANING, J.


*People* v. *Jones* (A083197)

# EXHIBIT  B

# CALIFORNIA APPELLATE COURTS
## Case Information

## 1st Appellate District

Change court ▼

Court data last updated: 03/05/2008 08:05 AM

Case Summary    Docket    Scheduled Actions    Briefs
Disposition    Parties and Attorneys    Trial Court

## Docket (Register of Actions)

**The People v. Jones**
**Division 5**
**Case Number A083197**

| Date | Description | Notes |
|---|---|---|
| 06/25/1998 | Notice of appeal lodged/received (criminal). | |
| 07/21/1998 | Record on appeal filed. | c-1-r-11 |
| 07/21/1998 | Probation report filed. | |
| 07/27/1998 | Counsel appointment order filed. | Cynthia A. Thomas appt's counsel for aplt, Jones/Indep/40 days. |
| 09/09/1998 | Default sent to court appointed counsel. | |
| 10/13/1998 | Requested - extension of time. | Attorney: Thomas, Cynthia Party: Jones, Luther |
| 10/15/1998 | Granted - extension of time. | Attorney: Thomas, Cynthia Party: Jones, Luther |
| 11/09/1998 | Requested - extension of time. | Attorney: Thomas, Cynthia Party: Jones, Luther |
| 11/10/1998 | Granted - extension of time. | Attorney: Thomas, Cynthia Party: Jones, Luther |
| 12/11/1998 | Telephone conversation with: | An rex is coming in, brief will be here Monday. |
| 12/14/1998 | Requested - extension of time. | Attorney: Thomas, Cynthia Party: Jones, Luther |
| 12/15/1998 | Granted - extension of time. | Attorney: Thomas, Cynthia Party: Jones, Luther |
| 12/16/1998 | Appellant's opening brief. | Attorney: Thomas, Cynthia Attorney: Thomas, Cynthia Party: Jones, Luther Attorney: First District Appellate Project Attorney: First District Appellate Project Party: Jones, Luther |
| 01/19/1999 | Respondent notified pursuant to rule 17(b). | |
| 02/08/1999 | Respondent's brief. | Attorney: Office Of The Attorney |

| | | General Party: The People |
|---|---|---|
| 03/05/1999 | Requested - extension of time. | Attorney: Thomas, Cynthia<br>Party: Jones, Luther |
| 03/09/1999 | Granted - extension of time. | Attorney: Thomas, Cynthia<br>Party: Jones, Luther |
| 03/11/1999 | Appellant's reply brief. | Attorney: Thomas, Cynthia<br>Attorney: Thomas, Cynthia Party:<br>Jones, Luther<br>was due 03-01-99 |
| 03/11/1999 | Case fully briefed. | |
| 03/17/1999 | To court. | case for review |
| 04/02/1999 | On May calendar. | |
| 04/21/1999 | Calendar notice sent.<br>Calendar date: | 5-26-99 at 11:00 a.m. |
| 05/03/1999 | Request for oral argument filed by: | Atty Thomas for appellant Jones. |
| 05/26/1999 | Cause argued and submitted. | |
| 06/10/1999 | Opinion filed. | The concurrent sentence imposed on count V is ordered stayed, such stay to become permanent upon completion of the sentences imposed on counts I, II, III, IV, and VI. The trial court is directed to submit a corrected copy of the abstract of judgment to the Department of Corrections. In all other respects, the judgment is affirmed. |
| 07/22/1999 | Petition for review in Supreme Court received. | from Cynthia A. Thomas, counsel for aplt. |
| 07/29/1999 | Record transmitted to Supreme Court. | |
| 07/30/1999 | Received document entitled: | Letter from the supreme court/the petition for review is deemed timely/answer may be filed by 08-12-99/reply within 10 days of the answer. |
| 08/25/1999 | Petition for review denied in Supreme Court. | received 08-31-99. |
| 08/31/1999 | Remittitur issued. | |
| 08/31/1999 | Case complete. | |
| 09/15/2000 | Shipped to state retention center, box # / list #: | L155 |
| 06/28/2004 | Received document entitled: | Amended Abstract of judgment, from superior ct. |
| 01/08/2007 | Shipped to state retention center, box # / list #: | L242 |

# EXHIBIT  C

CLOSED, ICMS, ProSe

# U.S. District Court
## California Northern District (San Jose)
## CIVIL DOCKET FOR CASE #: 5:00-cv-20600-JW

Jones, et al v. Small
Assigned to: Judge James Ware
Demand: $0
Case in other court:
Cause: 28:2241 Petition for Writ of Habeas Corpus

Date Filed: 04/26/2000
Date Terminated: 12/02/2003
Jury Demand: None
Nature of Suit: 530 Habeas Corpus (General)
Jurisdiction: Federal Question

**Plaintiff**

**Luther Jones, Jr.**

represented by **Luther Jones, Jr.**
P-00148
CSP-Solano II
California State Prison-Solano
P.O. Box 4000
Vacaville, CA 95696
PRO SE

V.

**Respondent**

**Warden Larry Small**

represented by **Bruce Louis Ortega**
California State Attorney's Office
455 Golden Gate Avenue
Suite 11000
San Francisco, CA 94102-7004
415/703-1335
Fax: 415-703-1234
Email: bruce.ortega@doj.ca.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 04/26/2000 | 1 | PETITION FOR WRIT OF HABEAS CORPUS (no process) Fee status ifpp entered on 4/26/00 () ; [3:00-cv-01460] (ab, COURT STAFF) (Entered: 04/27/2000) |
| 04/26/2000 | 2 | CLERK'S NOTICE re: completion of In Forma Pauperis affidavit or payment of filing fee due within 30 days. [3:00-cv-01460] (ab, COURT STAFF) (Entered: 04/27/2000) |

| | | |
|---|---|---|
| 05/03/2000 | 3 | NOTICE by Petitioner Luther E. Jones of change of address to Poo148, A5-125, Box 44750, 60th Street West, Lancaster, CA 93536. [3:00-cv-01460] (ab, COURT STAFF) (Entered: 05/09/2000) |
| 05/22/2000 | 4 | IN FORMA PAUPERIS AFFIDAVIT by Petitioner for leave to proceed in forma pauperis [3:00-cv-01460] (ab, COURT STAFF) (Entered: 05/23/2000) |
| 05/22/2000 | 5 | Request for reassignment to a U.S. District Judge for trial and disposition by Petitioner (ab, COURT STAFF) (Entered: 05/23/2000) |
| 05/31/2000 | 6 | CLERK'S NOTICE of impending reassignment to a United States District Judge [3:00-cv-01460] (ab, COURT STAFF) (Entered: 06/05/2000) |
| 06/02/2000 | 8 | LETTER to clerk dated 5/29/00 from Luther E. Jones re status of case and change of address. [3:00-cv-01460] (ab, COURT STAFF) (Entered: 06/07/2000) |
| 06/05/2000 | 7 | ORDER TO SHOW CAUSE re why writ should not be issued: by Judge James Ware (cc: all counsel) granting affidavit motion for leave to proceed in forma pauperis [4-1] Clerk is to serve by certified mail a copy of this order and the Petition to the Attorney General for the State of California. [3:00-cv-01460] (cv, COURT STAFF) (Entered: 06/06/2000) |
| 06/07/2000 | 9 | ORDER by Assignment Committee Case reassigned to Judge James Ware (formerly C-00-1460 JL) ( Date Entered: 6/12/00) (cc: all counsel) [3:00-cv-01460] (ab, COURT STAFF) (Entered: 06/12/2000) |
| 06/12/2000 | 10 | ORDER TO SHOW CAUSE re why writ should not be issued: by Judge James Ware (cc: all counsel) granting affidavit motion for leave to proceed in forma pauperis [4-1]; Clerk is to mail by certified mail a copy of petition to the Attorney General. [5:00-cv-20600] (cv, COURT STAFF) (Entered: 06/13/2000) |
| 06/22/2000 | 11 | NOTICE by Plaintiff Luther E. Jones of change of address [5:00-cv-20600] (cv, COURT STAFF) (Entered: 06/22/2000) |
| 07/03/2000 | 12 | NOTICE by Plaintiff Luther E. Jones of change of address [5:00-cv-20600] (cv, COURT STAFF) (Entered: 07/03/2000) |
| 07/13/2000 | 13 | MOTION before Judge James Ware by Respondent Larry Small to exceed page limitation [5:00-cv-20600] (cv, COURT STAFF) (Entered: 07/19/2000) |
| 07/31/2000 | 14 | MOTION before Judge James Ware by Plaintiff Luther E. Jones for appointment of counsel [5:00-cv-20600] (cv, COURT STAFF) (Entered: 08/01/2000) |
| 08/02/2000 | 15 | RESPONSE by Respondent Larry Small to order to show cause [10-1] [5:00-cv-20600] (cv, COURT STAFF) (Entered: 08/03/2000) |
| 08/02/2000 | 16 | MEMORANDUM by Respondent Larry Small in support of 5-1] [5:00-cv-20600] (cv, COURT STAFF) (Entered: 08/03/2000) |

| 08/02/2000 | 17 | Index by Larry Small re: answer [15-1] [5:00-cv-20600] (cv, COURT STAFF) (Entered: 08/03/2000) |
|---|---|---|
| 08/02/2000 | 18 | EXHIBITS Vol 1 thru 4 re answer [15-1] [5:00-cv-20600] (cv, COURT STAFF) (Entered: 08/03/2000) |
| 08/04/2000 | 19 | ORDER by Judge James Ware granting motion to exceed page limitation [13-1] ( Date Entered: 8/9/00) (cc: all counsel) [5:00-cv-20600] (cv, COURT STAFF) (Entered: 08/09/2000) |
| 09/05/2000 | 20 | MOTION before Judge James Ware by Plaintiff Luther E. Jones for traverse , for order and appeal , for appointment of counsel [5:00-cv-20600] (cv, COURT STAFF) (Entered: 09/06/2000) |
| 01/09/2001 | 21 | ORDER by Judge James Ware denying motion for appointment of counsel [20-3] ( Date Entered: 1/9/01) (cc: all counsel) [5:00-cv-20600] (cv, COURT STAFF) (Entered: 01/09/2001) |
| 08/30/2001 | 22 | LETTER dated 8/27/01 from Luther E. Jones re: status [5:00-cv-20600] (cv, COURT STAFF) (Entered: 08/30/2001) |
| 11/02/2001 | 23 | NOTICE by Plaintiff Luther E. Jones of change of address [5:00-cv-20600] (cv, COURT STAFF) (Entered: 11/02/2001) |
| 01/22/2002 | 24 | NOTICE by Plaintiff Luther Jones Jr of change of address [5:00-cv-20600] (cv, COURT STAFF) (Entered: 01/23/2002) |
| 09/13/2002 | 25 | MOTION before Judge James Ware by Plaintiff Luther Jones Jr for appointment of counsel [5:00-cv-20600] (gm, COURT STAFF) (Entered: 09/17/2002) |
| 11/04/2002 | 26 | LETTER dated 10/30/02 from Luther Jones Jr re: Status of case. [5:00-cv-20600] (cv, COURT STAFF) (Entered: 11/09/2002) |
| 07/25/2003 | 27 | ORDER by Judge James Ware denying motion for appointment of counsel [25-1] ( Date Entered: 7/28/03) (cc: all counsel) [5:00-cv-20600] (cv, COURT STAFF) (Entered: 07/28/2003) |
| 12/02/2003 | 28 | ORDER by Judge James Ware denying habeas corpus petition [1-1] ( Date Entered: 12/3/03) (cc: all counsel) [5:00-cv-20600] (cv, COURT STAFF) (Entered: 12/03/2003) |
| 12/02/2003 | 29 | JUDGMENT: by Judge James Ware in favor of respondent. Petitioner take nothing by way of his petition. dismissing case ( Date Entered: 12/3/03) (cc: all counsel) [5:00-cv-20600] (cv, COURT STAFF) (Entered: 12/03/2003) |
| 12/12/2003 | 30 | LETTER dated 12/7/03 from Luther Jones Jr. re: Denying petition for writ of habeas corpus. [5:00-cv-20600] (cv, COURT STAFF) (Entered: 12/15/2003) |
| 12/12/2003 | 31 | MOTION before Judge James Ware by Plaintiff Luther Jones Jr. for appointment of counsel [5:00-cv-20600] (cv, COURT STAFF) (Entered: 12/15/2003) |
|  |  |  |

| 12/12/2003 | 32 | MOTION before Judge James Ware by Plaintiff Luther Jones Jr. for traverse , for leave to appeal in forma pauperis [5:00-cv-20600] (cv, COURT STAFF) (Entered: 12/15/2003) |
| 01/22/2004 | 33 | NOTICE by Plaintiff Luther Jones Jr. of change of address [5:00-cv-20600] (cv, COURT STAFF) (Entered: 01/23/2004) |
| 01/27/2004 | 34 | LETTER dated 1/21/04 from Luther Jones Jr. re: follow-up letter dated on 12/7/03. [5:00-cv-20600] (cv, COURT STAFF) (Entered: 01/28/2004) |
| 02/03/2004 | 35 | NOTICE OF APPEAL by Plaintiff Luther Jones Jr. from Dist. Court decision judgment [29-2] Fee status fee not paid [5:00-cv-20600] (cv, COURT STAFF) (Entered: 02/04/2004) |
| 02/03/2004 | 36 | MOTION before Judge James Ware by Plaintiff Luther Jones Jr. for certificate of appealability [5:00-cv-20600] (cv, COURT STAFF) (Entered: 02/04/2004) |
| 02/26/2004 | 37 | ORDER by Judge James Ware denying motion for certificate of appealability [36-1], denying motion for leave to appeal in forma pauperis denying motion for appointment of counsel [31-1] ( Date Entered: 2/26/04) (cc: all counsel) [5:00-cv-20600] (dhm, COURT STAFF) (Entered: 02/26/2004) |
| 03/05/2004 | | RECORD on Appeal to USCA, cnsl notified. re appeal [35-1] [5:00-cv-20600] (cv, COURT STAFF) (Entered: 03/05/2004) |
| 03/09/2004 | | RECEIPT of acknowledgment of documents mailed to USCA (tracking number 7003-1010-0001-1653-1061) [5:00-cv-20600] (cv, COURT STAFF) (Entered: 03/09/2004) |
| 03/12/2004 | 38 | RECEIPT from USCA of clerk's record on appeal [5:00-cv-20600] (cv, COURT STAFF) (Entered: 03/12/2004) |
| 05/04/2004 | 39 | CERTIFIED COPY of USCA Order: The request for a certificate of appealability is denied. [5:00-cv-20600] (cv, COURT STAFF) (Entered: 05/05/2004) |
| 05/05/2004 | 40 | CLERK's letter spreading the mandate to counsel. re appeal [35-1] [5:00-cv-20600] (cv, COURT STAFF) (Entered: 05/05/2004) |
| 05/05/2004 | 41 | RECORD ON APPEAL RETURNED FROM USCA [35-1] [5:00-cv-20600] (case not closed out, we may need record back) (cv, COURT STAFF) Modified on 05/05/2004 (Entered: 05/05/2004) |
| 11/07/2005 | | FILE located at Federal Records Center (FRC) San Bruno, CA. Accession No: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, Location No:83976, Box No:26. (pmc, COURT STAFF) (Filed on 11/7/2005) (Entered: 11/07/2005) |

| PACER Service Center |
| --- |
| Transaction Receipt |
| 03/05/2008 08:41:59 |

| PACER Login: | dj0082 | Client Code: | |
|---|---|---|---|
| Description: | Docket Report | Search Criteria: | 5:00-cv-20600-JW |
| Billable Pages: | 3 | Cost: | 0.24 |